IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CONNIE DARLENE STEWART, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:17CV316 |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Connie Darlene Stewart ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I. PROCEDURAL HISTORY

Plaintiff protectively filed her application for DIB on January 22, 2013, alleging a disability onset date of May 7, 2011. (Tr. at 13, 187-91.)[1] Her claim was denied initially (Tr. at 90-109), and that determination was upheld on reconsideration (Tr. at 110-125). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 141-42.) Plaintiff attended the subsequent hearing on November 24, 2015,

---

[1] Transcript citations refer to the Administrative Record [Doc. #10].

along with her attorney and an impartial vocational expert. (Tr. at 13.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 23), and, on January 30, 2017, the Appeals Council denied Plaintiff's request for review of that decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-5).

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

3

Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

4

"perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since May 7, 2011, her alleged onset date. Plaintiff therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> diabetes; multiple sclerosis; carpal tunnel syndrome; hearing problems – sensorineural; vertigo; osteoarthritis; and the inability to bend the middle and pointer fingers in the right hand.

(Tr. at 15.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 16.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform:

> light work as defined in 20 CFR 404.1567(b) except [she] can sit for 6 hours total in an eight hour work day, and stand for 6 hours total in an 8 hour workday. [Plaintiff] can perform frequent but not constant fingering and handling. [She] can be exposed to no more than a moderate noise level. She can occasionally

5

climb, balance, stoop, kneel, and crouch, but she can never crawl. [Plaintiff] can perform frequent but not constant pushing and pulling. She must [avoid] concentrated exposure to hazards.

(Tr. at 17.) The ALJ found at step four that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, she could perform her past relevant work as an office administrator, executive secretary, and administrative secretary. (Tr. at 22-23.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 23.)

Plaintiff now raises two challenges to the ALJ's decision. First, she contends that the ALJ erred by failing to consider the Commissioner's previous final decision as required by Albright v. Commissioner, 174 F.3d 473 (4th Cir. 1999) and Acquiescence Ruling 00-1(4). Second, Plaintiff argues that the ALJ improperly weighed the medical opinion evidence. After a careful review of the record, the Court finds that neither of these contentions merit remand.

    A.    Albright

In Albright, the Fourth Circuit clarified the effect of prior disability findings on the adjudication of subsequent disability claims. Soon afterward, the Social Security Administration issued Acquiescence Ruling ("AR") 00-1(4), which set forth guidelines for its administrative decision makers in light of the Albright decision. In pertinent part, these guidelines provide that the findings at each step of the sequential evaluation process in a prior final decision must be considered as evidence and then given "appropriate weight in light of all relevant facts and circumstances." AR 00-1(4). The relevant factors include whether the fact on which the prior finding was based is "subject to change with the passage of time, such as a fact relating to the severity of a claimant's medical condition;" the "likelihood of such

6

change, considering the length of time that has elapsed between the period previously adjudicated and the period being adjudicated in the subsequent claim;" and the "extent that evidence not considered in the final decision on the prior claim provides a basis for making a different finding with respect to the period being adjudicated in the subsequent claim." Id. Thus, an adjudicator should give "greater weight to such a prior finding when the previously adjudicated period is close in time to the period being adjudicated in the subsequent claim" and the adjudicator "must consider all relevant facts and circumstances on a case-by-case basis." Id.

Here, a prior administrative decision was issued on May 6, 2011, and Plaintiff's alleged disability period in the present case began the very next day, May 7, 2011, as the ALJ acknowledged, and involves many of the same impairments as her previous claim. (Tr. at 15, 21, 70-71.) However, the 2011 decision included a "sit/stand" option in the RFC, based on Plaintiff's treatment for mild knee, hip, and low back pain in 2007 and 2009 and based on Plaintiff's complaints that she could not sit for long periods of time. (Tr. at 73-74, 75-77, 79). Specifically, the RFC limited Plaintiff to positions "allowing for [Plaintiff] to sit for 30 minutes at a time, and stand as needed." (Tr. at 72.) In contrast, the current 2015 decision did not include a "sit/stand" option in the RFC. Plaintiff contends that the ALJ's failure to include the "sit/stand" option or explain its omission violates Albright. However, the ALJ explained at length why Plaintiff's knee and hip pain were not included as severe impairments in 2015, specifically noting the results of two intervening consultative examinations in 2013:

> [Plaintiff] has reported knee and hip pain, but [Plaintiff] was seen for a consultative examination with Larry M. Gish, MD on March 29, 2013. Dr. Gish noted that [Plaintiff] presented conflicting symptoms at the examination. He noted that she had a hard time walking into the examination room, and would

7

lose her balance, and had a strongly positive Romberg and could not walk in a tandem fashion. However, he also noted that when she walked to the car, she did use a cane, but walked at a rather quick rate and did not have a significant limp, and walked at least 300 feet without an apparent significant problem. She was also noted as having good muscle strength in all major distal and proximal muscle groups. [Plaintiff] was seen for another consultative examination with Vincent F. Hillman on November 15, 2013. At that examination, it was noted that [Plaintiff] can drive, dress, and feed herself, and also that she has been working. [Plaintiff] ambulated without difficulty, and was able to get on and off the examining table as well as up and out of a chair. She was able to dress and undress herself with no problems. Straight leg raising was negative while sitting and supine, and grip strength was 5/5 bilaterally. She had range of motion in her upper and lower extremities, although there was a slight decrease in sensory, light touch, and pinprick sensation in the feet. These examinations do not support a finding that [Plaintiff's] him and knee pain has more than a minimal impact on her ability to perform work related activities. Additionally, even if these conditions were severe, they are adequately accounted for in her limitation to light work and the postural limitations outlined below.

(Tr. at 15-16.) Moreover, the ALJ also outlined additional subsequent evidence, including records from March 2014, reflecting that Plaintiff reported to her doctor that she did yoga daily and was a writer/author (Tr. at 19, 369-70.), and records from January and April 2015 reflecting that she delayed making an appointment with a specialist because she was "quite busy at the moment writing a book and had a busy schedule," and she delayed trying prescribed medication because "she was trying to finish her novel." (Tr. at 19, 410, 404.)

In addition, the ALJ in the present 2015 decision noted Plaintiff's claims regarding her ability to walk, sit, and stand (Tr. at 18), but detailed multiple reasons for finding Plaintiff not credible, and that credibility determination referred specifically to the prior 2011 decision.

The claimant was seen for a consultative examination with Larry M. Gish, MD on March 29, 2013. Dr. Gish noted that [Plaintiff] presented conflicting symptoms at the examination. He noted that when she came in, she had a wrist splint on and she was unable to open her first and second fingers on her right hand, and even her third and fourth fingers were locked. However, later as the interview went on, she had to put pills back into a zip-lock bag and zip up her pants, and do her button, which she seemed to do without any problems. He

8

noted that she had a hard time walking into the examination room, and would lose her balance, and had a strongly positive Romberg and could not walk in a tandem fashion. However, he also noted that when she walked to the car, she did use a cane, but walked at a rather quick rate and did not have a significant limp, and walked at least 300 feet without an apparent significant problem. She was also noted as having good muscle strength in all major distal and proximal muscle groups.

[Plaintiff] was seen for another consultative examination with Vincent F. Hillman, MD on November 15, 2013. At that examination, it was noted that [Plaintiff] can drive, dress, and feed herself, and also that she has been working. [Plaintiff] ambulated without difficulty, and was able to get on and off the examining table as well as up and out of a chair. She was able to dress and undress herself with no problems. Hearing and speech were grossly normal. Straight leg raising was negative while sitting and supine, and grip strength was 5/5 bilaterally. She had no problems with dexterous ability, and had range of motion in all of the joints of her hands, upper, and lower extremities. There was a slight decrease in sensory, light touch, and pinprick sensation in the feet.

. . . .

Overall, [Plaintiff's] allegations are not entirely credible. The medical evidence of record does not support the level of severity alleged by [Plaintiff]. She has good strength findings, benign examinations, and little treatment beyond medication and dietary management. Additionally, at the hearing, [Plaintiff] was asked what she did on a typical day, and she testified that she would get up and get ready for work at 6am. [Plaintiff] then corrected herself and testified that she was not working, but was still doing some light typing at that time. The record reflects that [Plaintiff] was maintaining a busy schedule as an author as recently as January of this year. Although [Plaintiff]'s earnings records do not reflect substantial gainful activity levels that would qualify this activity as work, it is clearly of interest to the undersigned as an activity of daily living. The undersigned finds [Plaintiff]'s avoidance of this topic at the hearing disingenuous. A note from [Plaintiff] to her doctor in her file clearly expresses a desire to minimize references to her activities as an author, including book tours. She even noted that in a prior decision, a prior administrative law judge concluded that because she could write a book, she could work. She is clearly expressing an awareness that this is a topic of interest and influential to her case. Her avoidance of this topic greatly detracts from her overall candor, as does her inconsistent presentation of symptoms at the consultative examinations discussed above. Moreover, [Plaintiff] has alleged an onset date only one day after the date of her prior decision. There is nothing in the record to support a finding that [Plaintiff]'s symptoms dramatically deteriorated in one day, which also detracts from her credibility.

(Tr. at 20-21.) Thus, while the ALJ did not explicitly assign a particular weight to the prior 2011 decision, it is clear that the prior decision was considered but was not given controlling weight, and the ALJ specifically relied on new evidence in the medical record since 2011, including evidence reflecting that Plaintiff was disingenuous and lacked credibility.[4]

Finally, the Court notes that even if these references were not sufficient to comply with Albright, any error was harmless in the specific circumstances of this case. In 2011, the ALJ determined at step four that, given Plaintiff's RFC, she could return to her past relevant work as a secretary as that job is generally performed. (Tr. at 79-80.) In 2015, the ALJ found at step four that Plaintiff "was capable of performing past relevant work as an office administrator, executive secretary, and administrative secretary as actually and generally performed." (Tr. at 22-23.) In short, neither RFC precluded Plaintiff from performing her past secretarial work. As Defendant correctly notes, these parallel findings demonstrate that, "even if the ALJ [in the present case] had adopted the sit-stand option from the prior ALJ's decision, . . . the determination that Plaintiff is not disabled under the Act would not have been altered." (Def.'s Br. [Doc. #18] at 14-15.) Accordingly, the Court finds that any error under Albright was harmless. See Gainey o.b.o. J.G. v. Berryhill, No. 3:15-cv-634-RLV-DCK, 2017 WL 3315271, at *6-8 (W.D.N.C. Aug. 3, 2017) (finding that substantial evidence supported the ALJ's decision where Albright consideration of an earlier decision could not have altered the outcome of the case).

---

[4] Defendant also notes that the ALJ specifically relied on the evidence of record, which included the 2011 decision, in making his findings (See Def.'s Br. [Doc. #18] at 12-13) (citing Melvin v. Astrue, 602 F. Supp. 2d 694, 702-704 (E.D.N.C. 2009), and that the ALJ gave great weight to the opinions of the State agency medical consultants, Drs. Caviness and Woods, both of whom indicated that they applied Albright when formulating their RFC assessments. (Def.'s Br. at 13-14) (citing Tr. at 22, 100, 103, 108, 107, 122).

For all of these reasons, the Court does not find any <u>Albright</u> error requiring remand in this case.

B.  Opinion Evidence

Plaintiff next contends that the ALJ improperly weighed the medical opinion evidence. In particular, she asserts that the ALJ erred in "(1) giving Dr. Caviness' opinion great weight, but then formulating a RFC that contradicts Dr. Caviness' findings; and (2) improperly weighing Dr. Tuttle's medical opinions in accordance with 20 C.F.R. § 404.1427." (Pl.'s Br. [Doc. #14] at 7.) Neither of these contentions merit remand.

1.  State agency consultants

As the ALJ explained in his decision, Dr. Caviness and Dr. Woods, the State agency medical consultants, both "opined that [Plaintiff] was limited to a light exertional level with occasional postural limitations and frequent but not constant fingering and handling." (Tr. at 22.)  The ALJ determined that these opinions were "consistent with the medical evidence of record and supported by specific references to supporting objective examinations within the record." (<u>Id.</u>)  He therefore assigned them great weight. The ALJ then incorporated most of the State agency findings in Plaintiff's RFC. However, the ALJ limited Plaintiff to "frequent but not constant pushing and pulling" (Tr. at 17), rather than occasional pushing and pulling with her right upper extremity and both lower extremities as posited by Drs. Caviness and Woods (Tr. at 104, 120).

Plaintiff now contends that, because the ALJ gave the State agency opinions great weight, he was required to accept all of the findings therein, including the limitation to occasional pushing and pulling. "At a minimum," Plaintiff argues, "the ALJ was duty bound

11

to explain" his reasons for rejecting a portion of the consultants' opinions. (Pl.'s Br. at 8.) However, the ALJ did specifically explain his reasons for adopting the restrictions set out in the RFC. Specifically, the ALJ found the Plaintiff's

> diagnosis of osteoarthritis, carpal tunnel syndrome, and her inability to bend her middle and right pointer fingers support a finding that the claimant is limited to the lifting capacity of light exertional level, and frequent but not constant fingering and handling, and frequent but not constant pushing and pulling. . . . However, repeated reports of good grip strength and range of motion as discussed above support a finding that no further limitations in lifting, pushing, pulling or manipulation are warranted.

(Tr. at 20.) Thus, the ALJ set out an explanation for the RFC adopted, including specifically as to pushing and pulling, and the explanation and analysis provides a "logical bridge" sufficient for meaningful review and supported by substantial evidence.

Moreover, any error in failing to address a particular subsection of Dr. Caviness' and Woods' reports was harmless. Plaintiff does not allege that greater pushing and pulling restrictions would impact her ability to perform her past secretarial duties. In fact, at the initial and reconsideration levels, the Social Security Administration concluded that, given the RFC set forth by the medical consultants, Plaintiff could perform her past relevant work as an office administrator. (Tr. at 106-107, 123.) At step four of the sequential analysis, the ALJ then identified the same job as one of three Plaintiff could still perform with the RFC set out in his decision (Tr. at 22-23), clearly indicating that Plaintiff could return to this work regardless of whether she could pull and push frequently or only occasionally.

Thus, for all of these reasons, the ALJ's failure to specifically address the pushing/pulling restrictions in the state agency opinions would not require remand in this case.

### 2. Dr. Tuttle

Regarding Dr. Tuttle, Plaintiff challenges the ALJ's applications of 20 C.F.R. § 404.1527(c)(2), better known as the "treating physician rule." The Fourth Circuit has held that for claims, like Plaintiff's, filed before March 24, 2017, ALJs must evaluate medical opinion evidence in accordance with 20 C.F.R. § 404.1527(c) and the "treating physician rule" embodied within the regulations. Brown v. Comm'r Soc. Sec., 873 F.3d 251, 255 (4th Cir. 2017). Under these regulations, "medical opinions" are "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." Id. (citing 20 C.F.R. § 404.1527(a)(1)). While the regulations mandate that the ALJ evaluate each medical opinion presented to her, generally "more weight is given to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you." Brown, 873 F.3d at 255 (quoting 20 C.F.R. § 404.1527(c)(1)). Thus, the ALJ generally accords the greatest weight—controlling weight—to the well-supported opinion of a treating source as to the nature and severity of a claimant's impairment, based on the ability of treating sources to

> provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(c)(2). However, if a treating source's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the case record," it is not entitled to controlling weight. Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5; 20 C.F.R. § 404.1527(c)(2); see also Brown,

873 F.3d at 255; Craig, 76 F.3d at 590; Mastro, 270 F.3d at 178.[5] Instead, the opinion must be evaluated and weighed using all of the factors provided in 20 C.F.R. § 404.1527(c)(2)-(c)(6), including (1) the length of the treatment relationship, (2) the frequency of examination, (3) the nature and extent of the treatment relationship, (4) the supportability of the opinion, (5) the consistency of the opinion with the record, (6) whether the source is a specialist, and (7) any other factors that may support or contradict the opinion. Moreover, even if an opinion by a treating physician is given controlling weight with respect to the nature and severity of a claimant's impairments, opinions by physicians regarding the ultimate issue of whether a plaintiff is disabled within the meaning of the Act are never accorded controlling weight because the decision on that issue is reserved for the Commissioner alone. 20 C.F.R. § 404.1527(d).

Where an ALJ declines to give controlling weight to a treating source opinion, she must "give good reasons in [his] . . . decision for the weight" assigned, taking the above factors into account. 20 C.F.R. § 404.1527(c)(2). "This requires the ALJ to provide sufficient explanation for 'meaningful review' by the courts." Thompson v. Colvin, No. 1:09CV278, 2014 WL 185218, at *5 (M.D.N.C. Jan. 15, 2014) (quotations omitted).

In the present case, the ALJ separately analyzed two opinions from Dr. Tuttle, the first consisting of an undated letter which appears to have been drafted in conjunction with

---

[5] For claims filed after March 27, 2017, the regulations have been amended and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c. However, the claim in the present case was filed before March 27, 2017, and the Court has therefore analyzed Plaintiff's claims pursuant to the treating physician rule set out above.

14

Plaintiff's June 15, 2011 medical appointment, and the second consisting of a November 17, 2015 form RFC questionnaire supplied by Plaintiff's attorney. (Tr. at 21-22, 321-22, 451-55.)

Regarding Dr. Tuttle's 2011 letter, the ALJ found as follows:

> [Dr. Tuttle] opined that [Plaintiff] cannot sit, or stand, for any sustained periods. He opined that she cannot bend at the waist more than 20 degrees, and that she cannot squat, cannot cross her legs, and cannot stand on one leg. He opined that she is unable to do even sedentary work because of her carpal tunnel syndrome, and cannot sit in [a] chair with her hands above her lap for more than fifteen minutes without standing, or changing her position. Little weight is given to this opinion because [RFC] and disability are issues reserved to the Commissioner. (20 CFR § 404.1527(d)). This opinion is also inconsistent with the medical evidence of record. Dr. Tuttle noted that the claimant had decreased handgrip strength, but this is not supported by evidence of record which shows 5/5 grip strength on examination, discussed above. Additionally, this letter appears to be accompanied by a list of notes from Dr. Tuttle from [Plaintiff], in which she lists her symptoms, and informs him that he disability case was denied and mentions that her lawyer is asking for referral to a new orthopedist because he felt that he former orthopedist compromised her disability case by referencing activities of daily living in his reports that included going on book tours. Dr. Tuttle's opinion appears to be a recitation of the symptoms listed by [Plaintiff] and perhaps influenced by [Plaintiff's] discussion of her disability case. Therefore, this opinion is given little weight.

(Tr. at 21.) The ALJ went on to analyze the 2015 form RFC questionnaire as follows:

> Dr. Tuttle also completed a [RFC] questionnaire date November 17, 2015, in which he opined that [Plaintiff] could perform bilateral grasping and fine manipulations only 2% of the time during [an] 8-hour workday, and could never perform reaching. He further opined that [Plaintiff] could only occasionally lift less than 10 pounds, that she needed to elevate her legs, and could only sit or stand for less than 10 to 15 minutes without needing to stand and walk, but that she could only walk for less than 5 minutes. This opinion is also given little weight. Again, [RFC] and disability are issued reserved to the Commissioner. (20 CFR § 404.1527(d)). Additionally, there is nothing in Dr. Tuttle's treatment records that warrant such extreme limitations. His records show that she has primarily been managed through medication. Her symptoms are repeatedly listed as back pain, but no other complaints are noted that would warrant these limitations, and his own records note that she has a very busy schedule and is writing a novel. Capacity to maintain a busy schedule does not support a finding of such extreme limitations. Therefore, this opinion is given little weight, as it is not supported by the evidence of record.

15

(Tr. at 21-22.)

Plaintiff now challenges the ALJ's findings that "'(1) [RFC] and disability are issues reserved to the Commissioner;' (2) Dr. Tuttle's opinion was not supported by the medical evidence of record; and (3) 'Dr. Tuttle's opinion appears to be a recitation of the symptoms listed by [Plaintiff] and perhaps influenced by [Plaintiff's] discussion of her disability case.'" (Pl.'s Br. at 10) (citing Tr. at 21-22). Plaintiff contends that "[n]one of the ALJ's purported reasons . . . meet the burden of substantial evidence." (Pl.'s Br. at 10) (citing Tr. at 21-22).

With respect to Plaintiff's first contention regarding issues reserved to the Commissioner, as discussed above, opinions by physicians regarding the ultimate issue of whether a plaintiff is disabled within the meaning of the Act are never accorded controlling weight because the decision on that issue is reserved for the Commissioner alone. 20 C.F.R. § 404.1527(d). Thus, to the extent Dr. Tuttle opines that Plaintiff "is unable to do even sedentary work" (Tr. at 321) or "can't work an 8-hour day" (Tr. at 453), the ALJ reasonably noted that "[RFC] and disability are issues reserved to the Commissioner" (Tr. at 21).

Moreover, the ALJ includes additional bases for according Dr. Tuttle's opinions little weight. With respect to Plaintiff's second contention regarding the support for Dr. Tuttle's opinion in the record, the record strongly supports the ALJ's finding that "there is nothing in Dr. Tuttle's treatment records that warrants such extreme limitations. His records show that she has primarily been managed through medication. Her symptoms are repeatedly listed as back pain, but no other complaints are noted that would warrant these limitations, and his own records note that she has a very busy schedule and is writing a novel." (Tr. at 21-22.) Although almost every treatment note from Dr. Tuttle relates that Plaintiff "complained of

16

back pain" (Tr. at 396, 399, 400, 401, 402, 403, 404, 406, 407, 409, 411, 412, 415, 419, 421, 422, 424, 425, 426, 427, 428, 430, 432, 434, 435, 437, 445, 446, 449), there is no indication that Dr. Tuttle ever examined Plaintiff with regard to this complaint or performed or ordered any type of objective test. On just one occasion, he noted that Plaintiff's "[s]ymptoms are relieved by nonsteroidal anti-inflammatory drugs and opioid analgesics." (Tr. at 445.) On all other occasions, he issued 30-day prescriptions for hydrocodone tablets (totaling 180 tablets per prescription) without comment. Dr. Tuttle did include several more detailed notes concerning Plaintiff's ongoing gastrointestinal issues, but he also explained that Plaintiff delayed scheduling a follow-up appointment with a specialist "because she is quite busy at the moment writing a book and has a busy schedule." (Tr. at 410; see also Tr. at 404.) From this, the ALJ was entitled to conclude that the "[c]apacity to maintain a busy schedule does not support a finding of such extreme limitations." (Tr. at 22.) The ALJ's decision also chronicles normal musculoskeletal findings from Plaintiff's treating medical providers throughout the time period at issue. (Tr. at 19) (citing Tr. at 305 (noting full range of motion of all joints and 5/5 strength in all extremities on December 21, 2012); (Tr. at 318) (noting normal range of motion and stability, muscle strength and tone "normal for age" on February 20, 2013); (Tr. at 320) (describing normal power, bulk, and tone, intact coordination, "slightly widened base" when walking, slightly reduced sensation, and slightly increased reflexes on September 29, 2011, most likely due to multiple sclerosis); (Tr. at 370-71) (Plaintiff complained of joint pain, but gait and station were normal upon exam on March 28, 2014)). The ALJ also considered at length the examination and opinions of the consultative examiners, as set out above, and the opinions of the state agency reviewers, none of which provide support for the extreme

17

limitations suggested by Dr. Tuttle. Ultimately, the ALJ reasonably concluded that Dr. Tuttle's opinions were unsupported by the medical evidence of record. (Tr. at 22.)

In addition, as to Plaintiff's third contention, the ALJ reasonably raised concerns regarding the reliability of Dr. Tuttle's opinion letter to the extent that it appears to have been prepared in response to Plaintiff's letter describing her symptoms and the prior denial of her disability claim. As discussed at length above, several incidents combined to create credibility issues and concerns, leading the ALJ to find Plaintiff disingenuous and less credible. Part of that discussion by the ALJ specifically references "[a] note from [Plaintiff] to her doctor in her file clearly express[ing] a desire to minimize references to her activities as an author, including book tours," following the prior denial of disability. (Tr. at 21.) The letter from Plaintiff to Dr. Tuttle includes a list of her symptoms and a discussion of the prior disability denial. (Tr. at 322.) In the context presented, the ALJ reasonably concluded that Dr. Tuttle's opinions were largely based upon "a recitation of the symptoms listed by [Plaintiff]" and were entitled to less weight. (Tr. at 21.)

In short, it appears that the ALJ gave "good reasons in [his] . . . decision for the weight" assigned to the various medical opinions and crafted an RFC for a limited range of light work which properly took all of the opinions – and the entire record - into account.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Summary Judgment [Doc. #13] be

DENIED, that Defendant's Amended Motion for Judgment on the Pleadings [Doc. #17] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 21st day of August, 2018.

                                                        /s/ Joi Elizabeth Peake
                                                    United States Magistrate Judge